UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

SHANNON B. C.,                                          Case No. 6:19-cv-00843-AC

                   Plaintiff,                   OPINION AND ORDER

   v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

                   Defendant.

_____

ACOSTA, Magistrate Judge:

      Plaintiff Shannon B. C.[1] seeks judicial review of the final decision of the Commissioner

of Social Security denying his application supplemental security income benefits under Title XVI

of the Social Security Act, 42 U.S.C. §§ 1381-1383f.   This court has jurisdiction pursuant to 42

U.S.C. § 1383(c)(3).   All parties have consented to allow a Magistrate Judge enter final orders

and judgment in this case in accordance with 28 U.S.C. § 636(c).   For the following reasons, the

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the
last name of the non-governmental party in this case.

Commissioner's decision is reversed and remanded for an immediate calculation and award of benefits.

*Procedural Background*

On June 16, 2015, Plaintiff protectively filed a Title II application for a period of disability and disability benefits, and a Title XVI application for supplemental security income benefits.   In both applications, Plaintiff alleged disability beginning July 1, 2003, due to bilateral shoulder impairments, lower abdominal hernia, degenerative disc disease of the cervical and lumbar spine, chronic headaches, post-traumatic stress disorder ("PTSD"), major depressive disorder, and social anxiety.   Tr. Soc. Sec. Admin. R. ("Tr.") at 197, ECF No. 11.   Plaintiff's claims were denied initially and upon reconsideration.   Plaintiff filed a request for a hearing before an administrative law judge ("ALJ").   On December 4, 2017, with the assistance of counsel, Plaintiff amended his alleged onset of disability date to February 19, 2015.[2]   Tr. 14, 357.   The ALJ held a hearing on January 30, 2018, at which Plaintiff appeared with his attorney and testified.   A vocational expert, Rebecca Hill, also appeared and testified.   Tr. 180.   On April 27, 2018, the ALJ issued an unfavorable decision.   The Appeals Council denied Plaintiff's request for review, and therefore, the ALJ's decision became the final decision of the Commissioner for purposes of review.

Plaintiff was born in 1970, was forty-six on his amended alleged onset date, and forty-seven on the date of the ALJ's decision.   Tr. 160, 338.   Plaintiff has a high school equivalency degree ("GED") and has no past relevant work.   Tr. 160.

\ \ \ \ \

---

[2]  This amendment discharged Plaintiff's Title II application for a period of disability and disability benefits.   Therefore, Plaintiff's appeal concerns only his application for supplemental security income pursuant to Title XVI.   (Pl.'s Br. at 1, ECF No. 18.)

*The ALJ's Decision*

At step one, the ALJ determined that Plaintiff has not engaged in substantial gainful employment since July 1, 2003.   Tr. 17.   At step two, the ALJ determined that Plaintiff has the following severe impairments:   right shoulder rotator cuff repair; degenerative disc disease of the lumbar spine; headaches; PTSD; major depressive disorder; social anxiety disorder; alcohol use disorder in remission; and methamphetamine use disorder in remission.   Tr. 17.   At step three, the ALJ determined that Plaintiff's severe impairments, singly or in combination, do not meet or equal the listing criteria of Sections 1.02, 1.04, 12.04, 12.06, or 12.15, or any other listed impairment.   Tr. 17-19.

The ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform light work with the following additional limitations:   he can frequently balance and occasionally stoop, kneel, and crouch, and can never crawl; he can never climb ropes, ladders, or scaffolds; he can never reach overhead with the bilateral upper extremities; he cannot tolerate exposure to workplace hazards such as machinery and unprotected heights; due to pain, side effects of medications, and mental impairments, he cannot work in proximity or have interactive contact with the public; and he can have no more than occasional interactive contact with coworkers or supervisors.   Tr. 19.   At step four, the ALJ determined that Plaintiff has no past relevant work. Tr. 24.   At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, jobs exist in the national economy that Plaintiff can perform, including such relevant occupations as marker, garment sorter, or electrical accessories sorter.   Tr. 24-25.   Accordingly, the ALJ found that Plaintiff was not disabled under the Act and denied his application for disability benefits.   Tr. 25.

\ \ \ \ \

Page 3  – OPINION AND ORDER

*Issues for Review*

Plaintiff asserts the ALJ made the following errors:  (1) improperly evaluated his subjective symptom testimony; (2) improperly concluded he does not meet or equal Listings 12.04, 12.06, or 12.15; (3) improperly evaluated the opinions of examining physicians Carolyn Ferreira, Psy.D., and William Trueblood, Ph.D.; (4) improperly evaluated the opinions of qualified mental health practitioners ("QMHPs") Melissa Frazier and Colleen Thomas; and (5) the RFC and hypothetical posed to the vocational expert failed to include all of his limitations and therefore the ALJ's step five determination is without support.  The Commissioner argues that the ALJ's decision is supported by substantial evidence and is free of legal error.  Alternatively, the Commissioner contends that even if the ALJ erred, Plaintiff has not demonstrated harmful error.

*Standard of Review*

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record.  42 U.S.C. § 405(g); *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017).   Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation and citation omitted); *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020); *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014).   To determine whether substantial evidence exists, the court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision.  *Trevizo*, 871 F.3d at 675; *Garrison*, 759 F.3d at 1009.   "'If the evidence can reasonably support either affirming or reversing,' the reviewing court 'may not substitute its judgment' for that of the Commissioner." *Gutierrez v. Comm'r Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996)).

*Discussion*

I.    The ALJ Erred in Evaluating Plaintiff's Subjective Symptom Testimony

    *A.    Standards*

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must perform two stages of analysis. *Trevizo*, 871 F.3d at 678; 20 C.F.R. §§ 404.1529, 416.929. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). At the second stage, absent affirmative evidence that the claimant is malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms. *Carmickle v. Commissioner Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015). Clear and convincing reasons for rejecting a claimant's subjective symptom testimony include "conflicting medical evidence, effective medical treatment, medical noncompliance, inconsistencies in the claimant's testimony or between her testimony and her conduct, daily activities inconsistent with the alleged symptoms, and testimony from physicians and third parties about the nature, severity and effect of the symptoms complained of." *Bowers v. Astrue*, No. 11-cv-583-SI, 2012 WL 2401642, at *9 (D. Or. June 25, 2012); *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2013); *Tommasetti*, 533 F.3d at 1039.

\ \ \ \ \

Page 5 – OPINION AND ORDER

B.    *Analysis*

At the hearing, Plaintiff testified that he is 47 years old, and has obtained a GED.   Plaintiff testified that he has no specialized training and has worked very little, that he last worked in 2003 for three months as a laborer.   Tr. 161.   Plaintiff testified that he does not have a driver's license and lives in an apartment with his mother.   Tr. 161-62.   Plaintiff described that he suffers from PTSD with flashbacks and frequent nightmare,s and has a history of childhood trauma.   Tr. 164. He explained that he trusts no one, does not like to be disturbed or touched, and generally does not like to be around people.   Tr. 165.   Plaintiff described that he feels rage and "goes off" for no reason at all, and that he does not like to leave the house and feels anxious when outside of his house.   Tr. 165.   Plaintiff testified that he leaves his house to see his therapist once every two weeks, and to refill his prescriptions or to the grocery store.   Tr. 166.   Plaintiff stated that he showers every three-to-four days, does not eat very well, and asks his mother to cook for him.   Tr. 166-67.

Plaintiff stated that he does not get along with others, is not cooperative, and argues with his neighbors.   Tr. 168.   He described "blowing up" at medical staff and has been kicked out of doctors' offices.   Tr. 169.   He stated that he does not get along with supervisors, cannot ride on a public bus, and cannot handle stress, and does not respond well to changes in routine or to criticism.   Tr. 167, 169, 171.   Plaintiff testified that he has difficulty with his memory, and cannot concentrate, people around him are distracting, and that he works slowly.   Tr. 170-71.

Plaintiff described ongoing headaches, low back pain, and shoulder pain from surgeries. Tr. 171, 172.   He testified that sitting for too long aggravates his back and causes his leg to go numb, and that he needs to move around, but that he can stand for only twenty minutes before needing to sit and rest.   Tr. 172-73.   Plaintiff stated that he spends most of his day lying down,

that his left hand goes numb and that he has had difficulties since his left shoulder surgery.   Tr. 174.

Plaintiff testified that he takes several medications, and that the Depakote gives him tremors and Lyrica gives him blisters.   Tr. 176.   Plaintiff noted that he last used methamphetamine over four years ago and stopped drinking alcohol one year ago.   Tr. 176. Plaintiff stated that he stopped using marijuana two weeks earlier.   Tr. 176.   Plaintiff testified that mental health therapy is helping with his feelings.   Tr. 177.   Plaintiff testified that his doctor recommended that he walk and lose weight, but he has not done so because of back pain.   Tr. 178- 79.

In the decision, the ALJ provided three reasons for discounting Plaintiff's subjective symptom testimony:   (1) his complaints were inconsistent with the medical evidence; (2) he has received only conservative treatment; and (3) his allegations of total disability are inconsistent with activities of daily living.   Plaintiff argues that the ALJ failed to identify clear and convincing reasons for discounting her subjective symptom testimony.   After careful examination, the court concludes that the ALJ's reasons are neither clear nor convincing.

　　　　　1.　　　objective medical evidence

Contradiction with the medical record is a relevant consideration in discounting a claimant's subjective symptom testimony. *Carmickle*, 533 F.3d at 1161; *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (holding that ALJ may consider lack of medical evidence but it cannot be the only factor supporting an adverse credibility finding); *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (same).

In the decision, the ALJ noted that Plaintiff's complaints of right shoulder pain and weakness were not fully supported by the medical record.   The ALJ then discussed how an MRI

Page 7  – OPINION AND ORDER

revealed mild to moderate degenerative changes, and that Plaintiff subsequently underwent surgical repair in December 2017. Tr. 20. The ALJ detailed that post-operatively, Plaintiff had good results with increasing range of motion with no tingling or numbness. Tr. 20. In the RFC, the ALJ restricted Plaintiff to no overhead reaching, seemingly crediting Plaintiff's complaints of shoulder limitations, but failed to identify any specific medical evidence concerning Plaintiff's shoulder pain or limitations that undermined his testimony. The ALJ's summary of the medical evidence and generalized finding that it contradicts Plaintiff's testimony is legal error. *See Brown-Hunter*, 806 F.3d at 489 (holding ALJ committed legal error by failing to identify which testimony was incredible and why); *Burrell v. Colvin*, 775 F.3d 1133, 1138-39 (9th Cir. 2014) (holding the ALJ must identify specific facts in the record that undermine claimant's testimony, and that generalized findings are insufficient).

Similarly, the ALJ discounted Plaintiff's testimony of severe back pain because it was inconsistent with the objective medical evidence. The ALJ summarized the medical evidence concerning Plaintiff's complaints of low back pain, noting that MRIs and other imaging showed mild to moderate abnormalities. Tr. 21. The ALJ noted that physical examinations of Plaintiff have revealed mixed results, with tenderness to palpation, variable limits in range of motion and decreased sensation and reflexes at times. The ALJ also noted that Plaintiff's strength, coordination, and gait have remained intact. Tr. 21. While the ALJ accurately indicated that the medical evidence supporting the severity of Plaintiff's low back pain is mixed, the ALJ erred by failing to articulate what specific evidence undermined Plaintiff's subjective testimony. *Brown-Hunter*, 806 F.3d at 489; *Burrell*, 775 F.3d at 1139. In doing so, the ALJ has failed to provide the court with sufficiently specific reasons for discounting Plaintiff's testimony. *Bunnell v. Sullivan*,

947 F.2d 341, 345-46 (9th Cir. 1991) (holding ALJ's reasons must be "sufficiently specific" to allow court to conclude claimant's testimony was not arbitrarily discounted).

Finally, the ALJ summarized Plaintiff's mental health treatment records, highlighting that Plaintiff has exhibited "anxiety, feeling on edge, irritability, agitation, feelings of helplessness and hopelessness, tearfulness, nightmares, rapid pressured speech, sleep disturbance, anger with some violence, aggressiveness, delusions, racing thoughts, and suicidal ideation[.]"  Tr. 21-22.  The ALJ found that Plaintiff's mental status examinations demonstrated alertness, orientation, fair eye contact, no acute distress, normal behavior, linear thought process, variable thought content, intact insight and judgment.  Tr. 22.  The ALJ also observed that Plaintiff had undergone therapy and received various prescribed medications with some improvement in symptoms, including mood stability.  Tr. 22.  After providing this summary, the ALJ found that Plaintiff's allegations are inconsistent with these findings, and that the RFC adequately incorporates any objective findings by "restricting [Plaintiff's] interactions with others."   Tr. 22.

The ALJ's sweeping rejection of Plaintiff's testimony concerning his mental health symptoms is wholly inadequate and unsupported by substantial evidence in light of the record as a whole.   The ALJ failed to detail which portions of his hundreds of pages of therapy treatment records are inconsistent with his alleged limitations.   The Commissioner suggests that "ALJ reasonably considered the plethora of mental status examination findings and found they supported significant limitations in social functioning, but not the degree of limitations Plaintiff alleged." (Def.'s Br. at 10, ECF No. 22.)   The Ninth Circuit has rejected an ALJ's reliance on positive treatment observations without considering their full context in similar cases.  Ghanim, 763 F.3d at 1164 (holding that treatment notes reflecting "good eye contact, organized and logical thought content, focused attention, and that the claimant was occasionally "upbeat" did not undermine

claimant's testimony); *Garrison*, 759 F.3d at 1017 (finding ALJ erred in discrediting claimant by citing "improvement" without discussing whether improvement was sustained).

Rather, mental health treatment records must be viewed "in light of the overall diagnostic record." *Garrison*, 759 F.3d at 1017 (holding ALJ erred in rejecting claimant's testimony by pointing to some treatment records showing occasional signs of improvement where overall record showed persistent nightmares, hallucinations, social anxiety, difficulty sleeping, and feelings of hopelessness); *Richard R. v. Comm'r Soc. Sec. Admin.*, Case No. 3:19-cv-00918-MK, 2020 WL 4193114, at *4 (D. Or. July 21, 2020) (holding ALJ erred in discounting claimant's testimony about severity of mental health limitations by citing to treatment notes showing "cooperative behavior, organized and goal directed thought process and intact memory").    Examining Plaintiff's mental health treatment records reveals persistent nightmares, flashbacks, insomnia, rage, social anxiety, isolation, and hopelessness.    *See, e.g.,* Tr. 58, 632, 646, 651, 659, 662, 673, 676, 696, 701, 730.    In short, the ALJ improperly selectively relied on instances of favorable psychological symptoms, and failed to identify how such instances are inconsistent with his testimony relating to his severe social limitations.    *Richard R.*, 2020 WL 4193114, at *4. Therefore, the court concludes the ALJ's first rationale fails to provide a specific, clear, and convincing reason for discounting Plaintiff's subjective symptom testimony.

2.      conservative treatment

The ALJ discounted Plaintiff's subjective symptoms testimony observing that "[Plaintiff's] treatment has been very conservative, largely over-the-counter and prescription medication.    He has not generally received the type of medical treatment one would expect for a totally disabled individual."    Tr. 20.    "Conservative treatment" may be sufficient to discount a claimant's testimony regarding the severity of an impairment.    *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th

Cir.2007).    Routine or conservative treatment, however, is not a proper basis for finding subjective symptom testimony unreliable without discussing the additional, more aggressive treatment options the ALJ believes are available.    *See Lapeirre-Gutt v. Astrue*, 382 F. App'x 662, 664 (9th Cir. 2010) (ALJ erred in relying on "conservative treatment" basis for rejecting the plaintiff's testimony when "the record does not reflect that more aggressive treatment options are appropriate or available.").

The record does not support the ALJ's finding of routine and conservative treatment regimen.    As noted above, in January 2017, Plaintiff underwent left shoulder surgery to repair a rotator cuff tear, and in December 2017, right shoulder surgery to repair a rotator cuff tear.    Tr. 904, 972.    Plaintiff was prescribed over-the-counter pain relievers and prescription muscle relaxers for his back pain, and Plaintiff engaged in physical therapy, with limited success.    Tr. 485, 595, 743-98.    Furthermore, with respect to Plaintiff's mental health symptoms, the ALJ does not discuss what additional treatment would be more appropriate than what he currently receives. Tr. 22.    The record shows Plaintiff has engaged in considerable mental health counseling and medication management.    Tr. 630-734.    Plaintiff takes several medications to treat his symptoms, and his providers report that he engages in therapy and is compliant with his medications.    Tr. 641.    Despite these efforts, Plaintiff continues to report feelings of anger and frustration, with an inability to regulate his emotions.    Tr. 58, 632-33.    *See also Miranda W. v. Saul*, Case No. 3:19-cv-1462-SI, ___ F. Supp. 3d ___, 2020 WL 4756737, at *5-6 (D. Or. Aug. 17, 2020) (holding that lack of psychiatric hospitalizations was not clear or convincing reason to subjective testimony about mental health symptoms where record showed consistent mental health treatment including medications and counseling).    Therefore, the ALJ's second rationale is not supported by

substantial evidence and fails to provide a specific, clear, or convincing reason to discount Plaintiff's subjective symptom testimony.

3.      activities of daily living

Activities of daily living may provide a basis for discounting a claimant's subjective symptoms if they contradict his testimony or meet the threshold for transferable work skills. *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012); *superseded by regulation on other grounds as stated in Schuyler v. Saul*, 813 F. App'x 341, 342 (9th Cir. 2020).   However, a claimant need not be utterly incapacitated to receive disability benefits, and a claimant's ability to complete certain routine activities is an insufficient basis upon which to discount subjective symptom testimony.   *Molina,* 674 F.3d at 1112-13 (observing that a "claimant need not vegetate in a dark room in order to be eligible for benefits" (quotation marks omitted)); *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) ("One does not need to be 'utterly incapacitated' in order to be disabled."); *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).

The ALJ found that Plaintiff's ability to "perform adequate self-care, do laundry and go out to the store" were inconsistent with his allegations of total disability.   The court disagrees. Plaintiff's ability to bathe, do laundry, pick up prescriptions, and perform minimal grocery shopping two times a month are the types of activities the Ninth Circuit has repeatedly determined do not contradict claims of disability.   *Garrison*, 759 F.3d at 1017 (finding ability to perform minimal activities of daily living is not inconsistent with disability).   The record reveals that Plaintiff consistently reported to his mental health providers that he has minimal interactions with others, leaving his home only to pick up prescriptions or to purchase groceries, and that he does so early in the morning to limit his potential interactions with others.   Tr. 382, 462, 466.   Thus, the ALJ's findings are not supported by substantial evidence in the record and fail to provide a

Page 12  – OPINION AND ORDER

specific, clear, or convincing reason to reject his subjective symptom testimony.   The ALJ erred.

III.   <u>The ALJ Erred in Evaluating Medical Evidence</u>

     *A.    Standards – Medical Opinions*

The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions.   *Carmickle*, 533 F.3d at 1164.   In general, the opinion of a treating physician is given more weight than the opinion of an examining physician, and the opinion of an examining physician is afforded more weight than the opinion of a nonexamining physician. *Ghanim*, 763 F.3d at 1160; *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007); 20 C.F.R. § 416.927. "If a treating physician's opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [it will be given] controlling weight."   *Orn*, 495 F.3d at 631 (internal quotations omitted) (alterations in original); *Trevizo*, 871 F.3d at 675 (same); 20 C.F.R. § 416.927(c).[3]   "When a treating physician's opinion is not controlling, it is weighted according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record, and specialization of the physician."   *Trevizo*, 871 F.3d at 675; 20 C.F.R. § 416.927(c)(2)-(6).

---

[3] The court notes that for all claims filed on or after March 27, 2017, the regulations set forth in 20 C.F.R. §§ 404.1520c, 416.920c (not §§ 404.1527, 416.927) govern.   The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources."   20 C.F.R. §§ 404.1520c, 416.920c. Thus, the new regulations eliminate the term "treating source," as well as what is customarily known as the treating source or treating physician rule.   *See* 20 C.F.R. §§ 404.1520c, 416.920c. In this case, Plaintiff filed his claim for benefits on June 16, 2015, well before March 27, 2017. *See* 20 C.F.R. § 404.614 (defining when an application for benefits is considered filed).   Thus, the court analyzes Plaintiff's claim utilizing § 416.927 (providing the rules for evaluating opinion evidence for claims filed prior to March 27, 2017).

To reject the uncontroverted opinion of a treating or examining physician, the ALJ must present clear and convincing reasons. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons. *Ford*, 950 F.3d at 1154-55. To meet this burden, the ALJ must set out a "detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). When evaluating conflicting opinions, an ALJ is not required to accept an opinion that is not supported by clinical findings, or is brief or conclusory. *Bray*, 554 F.3d at 1228.

B.     Analysis

Plaintiff argues that the ALJ erred in evaluating the opinions of examining psychologists Drs. Ferreira and Trueblood, and treating mental health providers Mses. Fraizer and Thomas. According to Plaintiff, Ferreira, Trueblood, Frazier, and Thomas opine that he has limitations that preclude competitive work, and when their opinions are properly considered, they demonstrate that Plaintiff is disabled.

1.     Carolyn Ferreira, Psy.D.

On April 4, 2016, Dr. Ferreira conducted a one-time psycho-diagnostic clinical interview and rerecord review for Disability Determination Services concerning his allegations of traumatic brain injury ("TBI"). Tr. 608. Plaintiff described feeling angry all the time, sleeping less than an hour at a time due to pain, reported no close friends, and rarely leaves the house, except for medical appointments. Tr. 609. Plaintiff reported that he recently had begun mental health therapy to help with his anger. Tr. 609. During the interview, Plaintiff reported a long history of alcohol and methamphetamine use and that he has been sober for two or three years. Tr. 610.

Page 14  – OPINION AND ORDER

Plaintiff stated that he has never been married, has no children, and has difficulty staying employed because he gets into fights and walks off the job.   Tr. 610.

Dr. Ferreira observed Plaintiff's affect was labile, displayed no evidence of delusions, and that his thought process was perseverative.   Tr. 611.   Dr. Ferreira observed that Plaintiff had difficulty staying focused on subjects of dialogue, with no suicidal or homicidal ideation.   Tr. 611. Dr. Ferreira found that Plaintiff was oriented to person, place, and time; had no difficulty recalling childhood memories, and was able to recall two of three items after a five-minute delay.   Tr. 611. Plaintiff could perform serial three's backward from ninety-seven, was able to spell "world" forward and backward, correctly identify present and past presidents, and incorrectly interpreted the common "glass houses" proverb.   Tr. 611.   Dr. Ferreira found that Plaintiff has some insight that his irritability is excessive and that acting on his irritation is inappropriate.   Tr. 611.   Dr. Ferreira diagnosed persistent depressive disorder.   Tr. 612.

Dr. Ferreira opined that Plaintiff has severe impairments with social functioning "as evidenced by having minimal social contact with family and the public and a history of repeated fights."   Tr. 612.   Dr. Ferreira opined that Plaintiff has severe impairments with persistence and pace due to his report of being unable to sustain activities for longer than five minutes due to headaches.   Tr. 612.   Dr. Ferreira further opined:

> [Plaintiff] would be expected to have difficulty interacting with other people in a socially appropriate manner.   He has limited tolerance for even minor, everyday annoyances. He would have difficulty concentrating and persisting on work-related tasks due to remaining fixed on his feelings of anger.

Tr. 612.   Dr. Ferreira noted whether Plaintiff has a TBI is beyond her expertise, and recommend he be evaluated by a neuropsychologist to determine whether a TBI diagnosis is appropriate.

\ \ \ \ \

2.    William Trueblood, Ph.D.

On December 7, 2017, Dr. Trueblood performed a neuropsychological examination, including evaluation for TBI, anger issues, headaches, "BIH," and "antisocial." Tr. 614. He reviewed Dr. Ferreira's evaluation report and conducted a clinical interview. Tr. 614. Dr. Trueblood reported that Plaintiff reported a history of earning low grades in high school, being suspended numerous times for fighting, and being expelled for drug possession. Tr. 614. Plaintiff reported to Dr. Trueblood that he has been fired from jobs for yelling and "blowing up" at his bosses, and that he has walked off numerous jobs. Tr. 615. Plaintiff reported having a bad back, arthritis, bursitis, and bad shoulders, which cause him pain. Tr. 615. Plaintiff also reported persistent headaches for which he takes Depakote, which has improved his symptoms. Tr. 615.

Dr. Trueblood recorded that Plaintiff reported he abused alcohol and methamphetamine for years, but now is sober. Tr. 615. Plaintiff reported that his father is deceased, and that his parents were alcoholics when he was young, and that he now lives with his mother in a small apartment but they mother previously were homeless. Tr. 615.

Notably, Dr. Trueblood indicated that "[Plaintiff] reports having essentially zero social contact in the last year." Tr. 615. Dr. Trueblood noted Plaintiff spoke on the phone with his one friend many months previously, and that he "stays away from people so he does not hurt anyone." Tr. 615. Plaintiff reported that his biggest factors preventing employment are rage, anger, his inability to deal with people, flashbacks, insomnia, nightmares, dissociation, and PTSD. Tr. 615. Dr. Trueblood indicated that Plaintiff reports being better able to control his anger around women than around men. Plaintiff described getting into fights when in line at the grocery store and at his apartment complex when he finds people rummaging in the dumpster. Tr. 616.

Plaintiff reported to Dr. Trueblood that he suffers frequent nightmares and flashbacks, and consequently gets only one or two hours of sleep per night.   Plaintiff reported to Dr. Trueblood that he is depressed, that several people close to him have committed suicide, and that he experienced flashbacks when he discovered their bodies.   Tr. 616.   Plaintiff endorsed memory problems and a short attention span.   Tr. 616.   Plaintiff reported that he spends most days lying down and that he performs minimal activities of daily living, brushing his teeth daily but bathing only every four or five days.   Tr. 616.

On mental status examination, Dr. Trueblood recorded that Plaintiff's statements were "relevant, logical, and goal-directed," and that there was no indication that he suffered delusions or hallucinations.   Tr. 617.   Dr. Trueblood found Plaintiff's affect was appropriate, he was not irritable, smiled readily, and was cooperative.   Tr. 617.   Dr. Trueblood found that Plaintiff's Full-Scale IQ was in the low average range on the Wechsler Adult Intelligence Scale-Fourth Edition ("WAIS-IV"); and there was no evidence of significant language-related disturbances, with normal processing speed on the Aphasia Screening Test and Trail-Making Test.

Dr. Trueblood found that Plaintiff's overall intellectual skills are in the low average range. Tr. 618.   Dr. Trueblood opined that Plaintiff very likely has memory, attention, and concentration problems in daily life due to the impact of PTSD, depression, pain, and sleep disturbance as opposed to neurocognitive impairment.   Tr. 618.   Dr. Trueblood diagnosed PTSD, persistent depressive disorder and mild major depressive episode, social anxiety disorder, alcohol use disorder in full sustained remission, and methamphetamine use disorder in full sustained remission.   Tr. 619.

Dr. Trueblood completed a Medical Source Statement in which he opined that Plaintiff has marked limitations in his ability to carry-out complex instructions, interact appropriately with co-

Page 17  – OPINION AND ORDER

workers, and respond appropriately to usual workplace situations and changes in a routine work setting.   Tr. 621-22.   Additionally, Dr. Trueblood opined that Plaintiff has extreme limitations in his ability to interact appropriately with the public and interact appropriately with supervisors. Tr. 622.

The ALJ gave Dr. Ferreira and Truebloods's opinions "partial weight."   Tr. 23.   Drs. Ferreira and Trueblood's opinions are contradicted by those of non-examining agency physician Scott F. Kaper, Ph.D., who opined that Plaintiff has moderate limitations with co-workers, and may have superficial contact with co-workers and supervisors.   Tr. 207.   Their opinions also are contradicted by non-examining agency physician Bill Hennings, Ph.D., who opined that Plaintiff has moderate limitations with co-workers, and could tolerate superficial contact with co-workers and supervisors, and that Plaintiff would be inappropriately reactive to harsh, unexpected, or threatening criticism.   Tr. 239-40.   Thus, the ALJ was required to provide specific and legitimate reasons supported by substantial evidence for discounting the opinions of Drs. Ferreira and Trueblood.   *Ford*, 950 F.3d at 1155.   The ALJ's reasoning falls short of this standard.

The ALJ did not discuss Drs. Ferreira and Trueblood's opinions separately.   Instead, the ALJ discounted them together, in a single sentence, which in its entirety provides the following:

> These opinion[s] were based upon one time examinations of [Plaintiff], and were not entirely consistent with the overall medical evidence of record, which showed alertness, orientation, fair eye contact, no acute distress, mild irritability, a viable mood and affect, normal behavior, variable speech, linear thought processes, variable thought content, intact impulse control, adequate fund of knowledge, and intact insight and judgment.

Tr. 23.

The court finds that the ALJ erred by citing the one-time examinations Drs. Ferreira and Trueblood each conducted as the reason to discount their opinions.   Dr. Ferreira's opinion is based

upon a clinical interview, records review, and a mental status examination.    Tr. 608-12. Likewise, Dr. Trueblood conducted a clinical interview, extensive testing, mental status examination, and relied on his clinical observations to formulate his opinion.    *See also Moe v. Berryhill*, 731 F. App'x 588, 591 (9th Cir. 2018) (holding ALJ erred in discounting opinion of one-time examining physician where opinion was based on clinical interview and mental status examination).    The fact that Drs. Ferreira and Trueblood examined Plaintiff one-time does not provide a specific and legitimate basis for rejecting their opinions.    *John G. v. Berryhill*, No. 3:17-cv-01076-AC, 2018 WL 3202000, at *3 (D. Or. June 28, 2018) (holding that one-time examination by consultative physician is not specific or legitimate basis for rejecting opinion; "If such a rationale were valid, an ALJ could summarily reject virtually any consultative medical opinion, as the overwhelming majority of such opinions are derived from a single clinical visit.").

The ALJ's other rationale – that their opinions are inconsistent with the medical record – likewise fails for several reasons.    First, the ALJ's laundry list of mental status examination findings does not identify which are inconsistent with either physician's opinion, leaving the court to speculate as to the ALJ's rationale.    *See Garrison*, 759 F.3d at 1012-13 (holding "ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another opinion is more persuasive, or fails to offer a substantive basis for his conclusion.").    Thus, the ALJ's rationale is legally insufficient.

Second, the Commissioner's attempt to supply a rationale amounts to a *post hoc* rationalization.    In its briefing to the court, the Commissioner suggests that Drs. Ferreira and Trueblood did not review Plaintiff's medical records, and contends the records reveal that Plaintiff's social limitations are more manageable than they assessed.    (Def.'s Br. at 5.) However, the ALJ did not premise rejection of Drs. Ferreira and Trueblood's opinions on their

Page 19  – OPINION AND ORDER

failure to review records.  *See Burrell*, 775 F.3d at 1141 (holding the court may not affirm Commissioner's final decision based on grounds not asserted by the ALJ); *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (providing the court is "constrained to review the reasons the ALJ asserts").  Moreover, this rationale is not fully supported by substantial evidence.  Contrary to the Commissioner's suggestion, Dr. Ferreira's report indicates that she reviewed medical records provided by Mosaic Medical.  Tr. 608.

And third, upon careful examination, the court finds that the mental status examination findings listed by the ALJ do not provide a specific or legitimate basis to reject their opinions.  In this case, Plaintiff's greatest barriers to employment are his social anxiety, isolation, anger toward others, and insomnia caused by his mental health conditions.  Consequently, Plaintiff's insignificant mental status exams – showing Plaintiff is alert, oriented, in no acute distress, and demonstrating a linear thought process – are not inconsistent with PTSD, social anxiety, and depression.

For example, in his evaluation, Dr. Trueblood observed that Plaintiff's statements were "relevant, coherent, logical, and goal-directed."  Tr. 617.  And Dr. Trueblood noted that Plaintiff's affect was "appropriate" with "no irritability," that Plaintiff "smiled pretty readily," and that he was "very pleasant."  Tr. 617, 619.  Despite these observations, Dr. Trueblood opined in his medical source statement that Plaintiff has extreme limitations in his ability to interact with the public and with supervisors, and marked limitations in his ability to interact appropriately with co-workers or respond to changes in routine.  Tr. 622.  Dr. Trueblood explained in his evaluation report that Plaintiff's symptoms, including nightmares, flashbacks, "negative alterations in cognition," interpersonal estrangement, persistent negative mood, prominent anger, and "marked reactivity or arousal," and anger and temper problems are consistent with a PTSD diagnosis.  Tr.

619. Dr. Trueblood explained that Plaintiff has substantial limitations in the areas of social interactions, including "significant temper control problems, with risk of physical aggression, and very low tolerance for social interaction, and "very low tolerance for the stress and frustration of interacting with others." Tr. 620. The ALJ fails to identify any rationale, let alone specific and legitimate reasons, for how Plaintiff's pleasant demeanor and lack of irritability are inconsistent with the marked and extreme limitations Dr. Trueblood assessed in all areas of social interaction. *Massey v. Berryhill*, Case No. 2:16-cv-05001-GJS, 2017 WL 2766158, at *3 (C.D. Cal. June 26, 2017) (finding ALJ did not provide specific and legitimate reasons to discount physician opinion because mental status finding of "bright affect" was not inconsistent with marked limitations concentration, persistence, and pace and social functioning); *see also Garrison*, 759 F.3d at 1018 (holding ALJ errs in isolating a few instances of mental health improvement to discount physician's opinion when evidence does not show broader development); *Ghanim*, 763 F.3d at 1164 (noting that "observations of cognitive functioning during therapy sessions [did] not contradict [the claimant's] reported symptoms of depression and social anxiety"). Accordingly, the ALJ failed to provide specific and legitimate reasons, backed by substantial evidence, for discounting Dr. Trueblood's opinion.

The ALJ's rejection of Dr. Ferreira's opinion fails for similar reasons. Being "behaviorally appropriate," "oriented," possessing an adequate fund of knowledge, and displaying variable speech is not inconsistent with Dr. Ferreira's opinion that Plaintiff suffers from severe impairments in social functioning because of his mental health limitations. Tr. 610-64. Here, Dr. Ferreira based her opinion that Plaintiff has difficulty interacting with others in a socially appropriate manner on her detailed clinical interview, mental status examination, record review, and clinical findings. Dr. Ferreira explained that Plaintiff has limited frustration tolerance for

Page 21  – OPINION AND ORDER

even minor, everyday annoyances, and would have difficulty concentrating and persisting on work-related tasks due to Plaintiff's remaining fixed on his feelings of anger.  Tr. 612.  Dr. Ferreira's opinion is supported not only by her own clinical findings, but also other substantial evidence in the medical record concerning Plaintiff's mental health.   Accordingly, the ALJ has not provided specific or legitimate reasons, backed by substantial evidence, for rejecting Dr. Ferreira's opinion.  *See David H. v. Comm'r Soc. Sec. Admin.*, Case No. 3:19-cv-00571-MK, 2020 WL 1970811, at *7 (D. Or. Apr. 24, 2020) (finding doctor's opinion that claimant suffered marked limitations was not contradicted by doctor's comment that claimant would benefit from vocational training).

C.      *Standards – Other Sources*

The opinion of therapists, such as Frazier and Thomas, usually qualify as "other" medical sources.  *See Haagenson v. Colvin*, 656 F. App'x 800, 802 (9th Cir. 2016) (providing that counselor is an "other" medical source and that regulations presume counselors are non-acceptable medical sources).   An ALJ may discount other medical sources' opinions by providing "germane reasons for doing so."  *Britton v. Colvin*, 787 F.3d 1011, 1013 (9th Cir. 2015) (internal quotation and citation omitted); *Popa v. Berryhill*, 872 F.3d 901, 906 (9th Cir. 2017) (providing that ALJ may discount opinion from an "other source" by identifying "reasons germane to each witness for doing so") (internal quotation and citation omitted).   Additionally, the ALJ must consider the factors set forth in 20 C.F.R. § 416.927(c) when evaluating the other sources' opinions.  *Revels v. Berryhill*, 874 F.3d 648, 655 (9th Cir. 2017) (providing ALJ must consider factors in § 404.1527(c), including nature and extent of treating relationship, supportability, and consistency with the record).

\ \ \ \ \

Page 22  – OPINION AND ORDER

D.      *Analysis*

1.      Melissa Frazier, QMHP

The record reflects that Ms. Fraizer began treating Plaintiff in March 2016 is Plaintiff's primary mental health provider and that she and others at Deschutes County Mental Health worked as team to provide services to Plaintiff.   Ms. Fraizer's treatment notes – and those of county's team – exceed 150 pages of this voluminous record.   Tr. 58-114, 630-735.   On January 8, 2018, Ms. Frazier completed a medical source statement in which she opined that Plaintiff had limitations exceeding thirty percent of a work day that involved the following:   maintaining attention for periods of time longer than two hours; working in proximity to others without being distracted by them; completing a normal workday or workweek without interruptions from psychological symptoms; interacting appropriately with the public; responding appropriately to criticism from supervisors; getting along with co-workers without being distracted or exhibiting behavioral extremes; and maintaining socially appropriate behavior.   Tr. 966-969.   Ms. Frazier further indicated that Plaintiff would be expected to absent four days per month due to his inability to tolerate the social aspect of employment, and would be expected to have angry outbursts and difficulty cooperating with peers and supervisors.   Tr. 969.   Ms. Fraizer's opinion is based on her treatment notes and assessments since March 2016.   Tr. 968.

The ALJ gave Ms. Frazier's opinion "partial weight" but found "the extent of limitations outlined are an[] overestimate of [Plaintiff's] limitations."   Tr. 23.   The ALJ's blanket rejection of Ms. Frazier's opinion fails to provide a germane reason for discounting it.   The ALJ does not identify how or why Ms. Frazier's opinion is "an overestimate" of Plaintiff's function.   On the contrary, Ms. Frazier's opinion is consistent with those provided by Drs. Ferreira and Trueblood and the medical record as a whole regarding Plaintiff's mental health limitations.   The record

Page 23  – OPINION AND ORDER

reveals that Ms. Frazier met with Plaintiff bi-weekly over the course of two years, and thus was in

a unique position to provide an assessment of Plaintiff's limitations.   *See* 20 C.F.R. §

416.927(c)(2)(i-ii) (providing that more weight is given to providers who are treating sources and

have provided care for a longer period of time).   Accordingly, the ALJ has failed to provide any

reason germane to Ms. Frazier for rejecting her opinion.

> 2.    Colleen Thomas, QMHP

Ms. Thomas was Plaintiff's case manager for the county's mental health team.   Tr. 732.

Ms. Thomas began providing services in March 2016 and met with Plaintiff approximately seven

times over two years.   On January 3, 2018, Ms. Thomas completed a medical source statement in

which she opined that Plaintiff had limitations exceeding thirty percent of a work day that involved

the following:   working in proximity to others without being distracted by them, accepting

instructions, and responding appropriately to criticism from supervisors.   Tr. 952.   Ms. Thomas

opined that Plaintiff has limitations exceeding twenty percent of a work day that involved the

following:   understanding, remembering, and carrying out detailed instructions;   maintaining

attention and concentration for periods longer than two hours; completing a normal workday or

workweek without interruptions from psychological symptoms; interacting appropriately with the

public; and responding appropriately to changes in the work setting.   Tr. 963.

Ms. Thomas further indicated that Plaintiff would be expected to be absent five days per

month due to his inability to interact with others in any work environment, noting that Plaintiff

would "easily become agitated" and would be expected to leave without notice or "act out

aggressively."   Tr. 964.   Ms. Thomas also opined that Plaintiff would be expected to be "off task"

thirty percent of the time, and indicated that he has "a very limited tolerance for interacting or

socializing with any individual for any length of time, including some of his treatment providers."

Page 24  – OPINION AND ORDER

Ms. Thomas noted that Plaintiff has difficulty self-regulating and lacks the ability to follow through on even simple tasks.   Tr. 964.   Ms. Thomas's opinion is based on her treatment notes and assessments since March 2016.   Tr. 963.

In the decision, the ALJ found that Ms. Thomas indicated that Plaintiff has a limited tolerance for interacting and socializing and gave her opinion "little weight" because her assessed limitations "overestimate" Plaintiff's functional limitations.   Tr. 23.   As with the previous discussion about regarding Ms. Frazier's opinion, the ALJ's generic rejection of Ms. Thomas's opinion fails to supply a germane reason for rejecting it.   Ms. Thomas's opinion is consistent with those of Drs. Ferreira, Trueblood, and Ms. Frazier, who all opined that Plaintiff suffers severe limitations.   And, their opinions are consistent with the record as whole demonstrating that Plaintiff struggles to contain his outbursts, has persistent flashback, nightmares, and lives a life of extreme isolation.   For the same reasons previously discussed regarding Ms. Frazier, the ALJ has erred in rejecting Ms. Thomas's opinion.

In summary, the ALJ failed to supply legally sufficient reasons supported by substantial evidence for rejecting the opinions of Ferreira, Trueblood, Frazier, and Thomas.   The ALJ's evaluation of the medical evidence is reversed.

III.    The ALJ's RFC Is Not Supported by Substantial Evidence

The ALJ improperly discredited Plaintiff's testimony, failed to provide legally sufficient reasons for rejecting the opinion evidence of Drs. Ferreira and Trueblood, and Mses. Frazier and Thomas.   By failing to incorporate all of Plaintiff's limitations into the RFC and, by extension, the dispositive hypothetical question posed to the VE, the ALJ's conclusion lacks evidentiary support.   *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 886 (9th Cir. 2006); *see also Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993) ("If a vocational expert's hypothetical does not reflect

Page 25  – OPINION AND ORDER

all the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy.") (internal citation omitted). Thus, the ALJ's step five finding is not supported by substantial evidence.

Because the ALJ's errors in evaluating Plaintiff's subjective symptom testimony and the medical evidence are dispositive, the court declines to address Plaintiff's step-three argument.

IV.    Remedy

The decision whether to remand for further proceedings or for the immediate payment of benefits lies within the discretion of the court. *Treichler*, 775 F.3d at 1101-02. A remand for award of benefits is generally appropriate when: (1) the ALJ failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed, there are no outstanding issues that must be resolved, and further administrative proceedings would not be useful; and (3) after crediting the relevant evidence, "the record, taken as a whole, leaves not the slightest uncertainty" concerning disability. *Id.* at 1100-01 (internal quotation marks and citations omitted); *see also Dominguez v. Colvin*, 808 F.3d 403, 407-08 (9th Cir. 2015) (summarizing the standard for determining the proper remedy). The second and third prongs of the test often merge into a single question: whether the ALJ would have to award benefits if the case were remanded for further proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1178 n.7 (9th Cir. 2000).

Plaintiff argues an award for an immediate payment of benefits is required because when his testimony and the opinions of Ferreira, Trueblood, Frazier, and Thomas are properly credited, the vocational testimony elicited at the hearing establishes that he is unable to sustain competitive employment. The Commissioner contends that remanding the case is appropriate because there are conflicts in the record that demonstrate Plaintiff is able to work in positions with little social interaction. The court disagrees.

Page 26 – OPINION AND ORDER

The record reveals that Plaintiff has a longstanding history of PTSD, and despite two years of ongoing, bi-weekly counseling and medication management, he continues to battle with nightmares, insomnia, anger, irritability, and emotional regulation.   Tr. 110-13, 630-33.   Plaintiff endorses, and the record fully supports, continued angry outbursts and "rage."   Tr. 58, 67-68, 110-13, 631.   Plaintiff avoids social contact to prevent angry outbursts.   Tr. 619-20.   Ms. Frazier opined that Plaintiff would be absent at least four times per month due to the social aspects of employment, and that he would be off-task at least thirty percent of the time due to his angry outbursts.   Tr. 969.   Similarly, Ms. Thomas opined that Plaintiff would be absent from work five days or more per month due to his inability to interact with others and that he would become agitated and leave without notice or act aggressively toward others.   Tr. 964.   Ms. Thomas also opined that Plaintiff would be off-task more than thirty percent of the time due to his inability to self-regulate, and that he would become increasingly agitated in a work setting.   Tr. 969.   At the hearing, the vocational expert, Ms. Hill, testified that being off task more than ten percent of the time would eliminate competitive employment:

> Q:   Okay. You said that over 15 percent off task would be too much.   What's the breaking point for these unskilled type jobs . . . that you identified?
>
> A:   Yes.   It's my opinion, . . . that anything over 10 percent is going to impact the ability to maintain competitive employment in the unskilled labor market.

Tr. 195-86.   And as discussed above, Drs. Trueblood and Ferreira endorsed extreme limitations in social functioning.   Tr. 612, 622.   Ms. Hill testified that an inability to appropriately interact with supervisors and coworkers would preclude employment.   Tr. 188 (providing that extreme and marked limitations with peers and supervisors would render an individual unable to maintain employment).   Additionally, Ms. Hill testified that absences in excess of one time per month would eliminate competitive employment.   Tr. 189 ("In the unskilled labor market anything over

Page 27  – OPINION AND ORDER

one day per month is going to impact ability to maintain competitive employment.").

Where a claimant meets all three criteria of the credit-as-true standard, a remand for an award of benefits is appropriate unless "the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled with the meaning of the Social Security Act." *Garrison*, 759 F.3d at 1020-21 (citations omitted).   Carefully considering the record as a whole, there is no "serious doubt" that Plaintiff is in fact disabled.[4]  *See id.* at 1021; *see also Revels*, 874 F.3d at 668 n.8 (explaining that where each of the credit-as-true factors is met, only in "rare instances" does the record as a whole leave "serious doubt as to whether the claimant is actually disabled").

Accordingly, the court exercises its discretion and credits the erroneously discredited evidence as true, and remands this case for an immediate calculation and payment of benefits.

*Conclusion*

Based on the foregoing, pursuant to sentence four of 42 U.S.C. § 405(g), the Commissioner's final decision REVERSED and REMANDED for an immediate calculation and award of benefits.

IT IS SO ORDERED.

DATED this 7th day of December, 2020.

_____
JOHN V. ACOSTA
United States Magistrate Judge

---

[4] On July 26, 2018, Plaintiff's attorney submitted a July 19, 2018 medical source statement from a member of his county mental health treatment team, Bridget Knight, PMHNP.  Tr. 109.  Ms. Knight's assessed limitations echo those of Mses. Frazier and Thomas, and are based on her personal evaluations of Plaintiff.  Tr. 110-13.  Ms. Knight's opinion provides further support for the court's reversal of the ALJ's assessment of the medical evidence and its conclusion that there is no serious doubt that Plaintiff is disabled.